974 F.2d 1344
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Angel P. URREA, husband; Sylvia Urrea, wife, Plaintiffs-Appellees,
v.
PHELPS DODGE CORPORATION; Pension Plan for Day's-Pay
Employees of Phelps Dodge Corporation, a defined
benefit employee pension benefit plan,
Defendants-Appellants.
 No. 91-16066.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 20, 1992.
Decided Sept. 10, 1992.
 
 Before KOZINSKI and DAVID R. THOMPSON, Circuit Judges, and VON DER HEYDT, District Judge.*
 MEMORANDUM**
 OVERVIEW
 Phelps Dodge Corporation and the Pension Plan for Day's-Pay Employees of Phelps Dodge Corporation, a defined benefit employee pension benefit plan ("the Plan"),[1] appeal the district court's judgment, following a bench trial, awarding Angel P. Urrea and Sylvia Urrea a single life disability pension, plus interest and attorney fees. We have jurisdiction under 28 U.S.C. § 1291. Because we conclude Angel P. Urrea ("Urrea") is unambiguously excluded from disability benefits under the plain language of the Plan, we reverse.
 FACTS
 Urrea began working for Phelps Dodge as a nonsalaried employee in 1956. He participated in strikes in 1968, 1971, 1974, 1977, 1980 and 1983. Urrea returned to work following each strike, except the 1983 strike. He and other members of his union went on strike that year on July 1. In September 1983 Urrea was permanently replaced as an economic striker.
 In December 1983 Urrea signed an unconditional offer to return to work and was placed on a preferential reinstatement list ("PRL"). Phelps Dodge called Urrea back to work on August 28, 1984, but he refused to return to work because the strike was still in progress. The strike continued until February 1986, when the union was decertified. Urrea did not work for Phelps Dodge after going on strike on July 1, 1983.
 After working intermittently on other jobs, Urrea was awarded social security disability benefits beginning in November 1987 for a degenerative knee condition which arose after he last worked for Phelps Dodge. In June 1988 he applied for permanent disability benefits under the Plan. The Plan administrator denied Urrea benefits on the ground that Urrea ceased being an "employee" eligible for benefits under the Plan after June 30, 1983.
 Urrea appealed the denial. The Plan administrator denied Urrea's appeal. Urrea and his wife Sylvia then filed suit in state court pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B),[2] claiming entitlement to benefits of $483.17 per month since the 1987 disability. Phelps Dodge removed the case to federal district court. Following a bench trial, the court declared ambiguous the Plan's language concerning whether or not a 1983 striker would be considered an "employee" entitled to benefits. The court determined that although it was required to defer to the Plan administrator's reasonable interpretation of what it considered to be the Plan's ambiguous language, the administrator had acted in bad faith in denying Urrea's claim for benefits. Judgment was entered in favor of Urrea and his wife, and this appeal followed.
 DISCUSSION
 In order to be eligible for permanent disability under the Plan, a claimant must have completed ten years of continuous service for Phelps Dodge and must be an "employee," as defined in the Plan, at the time of permanent disability. We review de novo the district court's determination that the term "employee" is ambiguous under the Plan. See Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534, 537 (9th Cir.), cert. denied, 111 S.Ct. 581 (1990).
 Section I, paragraph 6 of the Plan defines "employee":
 "Employee" means any person who is regularly employed by the Company ... A person shall be deemed to be regularly employed by the Company if such person is on the payroll of the Company or is off the payroll during an absence which does not constitute a break of employment as hereinafter provided in Paragraph 8 of this Section 1.
 Urrea was not "on the payroll" at the time of his permanent disability. He does not dispute this. Rather, he contends that he was "off the payroll during an absence which [did] not constitute a break of employment." The Plan provides:
 Except as otherwise provided in this Paragraph 8, the employment of an Employee shall be deemed to have been broken by (i) a quit, discharge or failure to return to work upon recall, or (2) a layoff, absence for sickness, leave of absence, or furlough, at a time when the Employee's absence for any such reason has continued for a period of one year or for such longer period as would have caused a break in seniority under the terms of the collective bargaining agreement with the Company applicable to such Employee and then in effect, or (iii) the termination of the Plan. The employment of an Employee shall not be deemed to have been broken by--....
 a. [Absence due to military duty];
 b. [Retirement because of disability and subsequent reemployment];
 c. [Layoff and return to work between 1930 and 1936];
 d. [Layoff at Copper Queen or Douglas Branch];
 e. [Layoff of three years or less in a reduction of force];
 f. [Absence of less than thirty days prior to August 20, 1952];
 g. [Off the payroll due to injury and receipt of disability award];
 h. [Sickness or accident];
 i. [Quit or discharge if rehired within six months];
 j. an absence on strike which ended prior to October 9, 1980. (emphasis added).[3]
 The language of paragraph 8 is not ambiguous. An "off payroll" applicant for disability benefits is eligible only if his absence does not constitute a break in employment. A break in employment is deemed to have occurred when an employee quits, is discharged or fails to return to work upon recall. Urrea left Phelps Dodge's employment on strike and failed to return to work upon recall. His employment was thus broken, unless he fits within one of the exceptions set forth in subparagraphs a through j. He does not. As a result, he is not entitled to disability benefits under the Plan.
 Urrea argues this result is inconsistent with the Castaneda arbitration decision. That decision was not binding upon the administrator. Even if the language of the Plan were ambiguous, as the district court acknowledged, the administrator reasonably could have concluded, contrary to the arbitrator's decision in Castaneda, that Urrea was not an "employee" under the Plan.
 Moreover, the result we reach is consistent with the decision of the National Labor Relations Board in Phelps Dodge Refining Corp. v. Mendoza, 299 NLRB 159 (Sept. 27, 1990). There, in denying claims for disability benefits, the NLRB ruled that at the time of disability the applicants "were no longer employees under the terms of the Plan because they were off the payroll during an absence that does constitute a break in employment." Id. at 6. Just as in this case, the Plan's strike exception applied only to a strike "which ended prior to October 9, 1980." The NLRB reasoned that "had the Union negotiated a similar agreement at the end of the 1983-85 strike, the alleged discriminatees could have relied on that to satisfy the requirement that they [were] Employees as defined by the Plan." Id. at 7-8 n. 5. The United States Court of Appeals for the District of Columbia upheld the NLRB decision in an unpublished disposition. Mendoza v. NLRB, No. 90-1589 (D.C.Cir. Oct. 2, 1991) (unpublished disposition).
 We conclude that Urrea is unambiguously excluded from disability benefits by the plain language of the Plan. The judgment of the district court is reversed. This cause is remanded to the district court with instructions to enter judgment in favor of Phelps Dodge. We leave to the district court the question whether Phelps Dodge is entitled to attorney fees, and if so how much.
 REVERSED and REMANDED.
 
 
 
 *
 Hon. James A. von der Heydt, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We refer to the defendants-appellants together as Phelps Dodge
 
 
 [2]
 That section provides:
 A civil action may be brought--
 (1) by a participant or beneficiary--
 * * *
 (B) to recover benefits due to him under the terms of his plan, to enforce, his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]
 
 
 [3]
 At the end of each strike in 1968, 1971, 1974, 1977, and 1980, the Plan was amended. Each amendment provided that the particular strike would not constitute a break in employment. No such agreement was reached with regard to the 1983 strike